# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 158

OCTOBER TERM, A.D. 2013

December 23, 2013

DEBORA McEWAN,

**Appellant**
**(Defendant),**

v.                                                          S-12-0252

**THE STATE OF WYOMING,**

**Appellee**
**(Plaintiff).**

*Appeal from the District Court of Big Horn County*
*The Honorable Steven R. Cranfill, Judge*

*Representing Appellant:*
> Office of the State Public Defender:  Diane M. Lozano, State Public Defender; Elisabeth M.W. Trefonas, Assistant Public Defender

*Representing Appellee:*
> Gregory A. Phillips, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Jeffrey Pope, Assistant Attorney General

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]   Appellant Debora McEwan was convicted of two felony counts of obtaining public welfare benefits by misrepresentation after entering guilty pleas without admitting guilt under *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).[1]   Our recent decision in *Balderson v. State*, 2013 WY 107, 309 P.3d 809 (Wyo. 2013), requires us to reverse McEwan's conviction and remand with instructions to reinstate her initial not guilty plea because the district court did not provide the required statutory firearms advisement when she changed her plea.   Any other issues relating to the taking of a guilty plea can be addressed on remand if she chooses to enter a guilty plea rather than go to trial.

[¶2]   McEwan also claims that she was denied her constitutional and rules-based rights to a speedy trial.   We find no violation of those rights.   She also claims error in the district court's order of restitution and the manner in which her original attorney was replaced, but we do not rule on those issues because her conviction will be vacated and the district court may resolve them on remand.

## ISSUES

[¶3]   McEwan raises five issues which, stripped to their essentials, may be stated as follows:

> 1.   Must her two guilty pleas be set aside because the district court failed to give the advisements required by W.R.Cr.P. 11 and Wyo. Stat. Ann. § 7-11-507?
>
> 2.   Was she deprived of her constitutional right to a speedy trial or the complementary right provided by W.R.Cr.P. 48?
>
> 3.   Did the district court abuse its discretion in denying McEwan's motion to withdraw her guilty plea?
>
> 4.   Was the district court's order relating to restitution illegal?

---

[1] *Alford* permits a court to accept a guilty plea from a defendant who, despite his denial of guilt, wishes to obtain the benefits of a plea bargain in the face of what he views as a strong case against him. This type of plea is discussed in greater detail below in note 4.

1

5.  Did the district court commit plain error by allowing one public defender to substitute for another in representing McEwan?

**FACTS**

[¶4]  In late October of 2008, an anonymous tip prompted the Wyoming Department of Family Services (DFS) to begin a nearly one-year investigation of McEwan and her adult son and daughter for possible welfare fraud.  McEwan lived with her three minor children in Greybull, and her adult daughter had a minor child of her own.  In her application for public assistance benefits, McEwan reported to DFS that she was self-employed and derived her income solely from her karaoke services business.

[¶5]  The investigation revealed that DFS had paid McEwan's adult son for caring for his adult sister's child at times when he was working somewhere else, and when his sister, contrary to her representations to DFS, was not working.  McEwan counter-endorsed the state warrants made payable to her son.  After examining documents submitted to DFS and the accounts owned by McEwan at Big Horn Federal Savings Bank, particularly one listed under the name "Live Wire Entertainment," the DFS investigator discovered that McEwan was working for four different employers (not including herself) under pseudonyms, and that she had deposited wages from three of the four into her "Live Wire" account.  She did not disclose those sources of income to DFS.

[¶6]  At the same time, McEwan obtained food stamps and child care assistance benefits relating to her minor children.  As to the latter, the investigator obtained records from the establishments to whom she reportedly provided karaoke services and could not verify that McEwan was working at the times she stated in her claims for child care assistance.

[¶7]  On January 6, 2010, the Big Horn County and Prosecuting Attorney charged McEwan with three felonies:  knowingly failing to report income to obtain food stamp benefits of $500 or more in violation of Wyo. Stat. Ann. § 42-2-112(a), (k)(i); knowingly falsifying work hours to obtain child care assistance in violation of § 42-12-112(h), (k)(i); and knowingly failing to report a bank account in order to obtain food stamp benefits under § 42-2-112(a), (k)(i).  She was arrested on January 11, 2010, and had her initial appearance in circuit court two days later.  That court appointed a public defender to represent her, established bond, and set a preliminary hearing for January 20.  She posted bond on January 18.

[¶8]  On the day set for the preliminary hearing, McEwan waived the time limits contained in Wyoming Rule of Criminal Procedure 5 and asked the circuit court to postpone it "for a reasonable time as established by the Court."  The hearing was first postponed to February 3 and later to March 24, 2010, when it was held and McEwan was

bound over to district court. The record does not reflect the reasons for the continuance from February 3 to March 24 of 2010.

[¶9]   On April 1, 2010, the county attorney requested a setting for arraignment. The arraignment was to take place on May 18, but on May 14 defense counsel moved for a continuance due to a scheduling conflict, and the district judge reset the hearing to June 22, 2010 at his request. Just prior to the arraignment, McEwan filed a motion to peremptorily disqualify the assigned district court judge as then permitted by Wyoming Rule of Criminal Procedure 21.1(a).[2]   The district judge was not aware when the arraignment began that he had been disqualified, and he read McEwan her rights and advised her of the nature of the charges against her and the maximum penalties. Before she was asked to enter a plea, McEwan's attorney advised the court of the peremptory disqualification and asked that the arraignment be postponed and that another judge be appointed. As defense counsel requested, the judge did not proceed with the arraignment, although he could have done so before reassigning the case under Rule 21.1(a).[3]

[¶10]  The new judge held McEwan's arraignment on August 26, 2010. On October 5, McEwan moved to compel discovery from DFS and requested a hearing on that motion. On October 21, the court set the motion hearing for October 28, and on October 25, it set McEwan's trial as the second case stacked for trial on January 31, 2011. Two days before a pretrial conference scheduled for January 13, McEwan moved to continue both the conference and the trial. On January 18, the court reset the pretrial conference to March 24 and the trial to April 11, 2011.

---

[2] This Court suspended Rule 21.1(a) pending further review by the Permanaent Rules Advisory Committee's criminal division on December 4, 2012. The rule has since been repealed.

[3]

> (a) *Peremptory Disqualification*. -- A judge may be peremptorily disqualified from acting in a case in which a felony is charged by the filing of a motion so requesting. A party may exercise the peremptory disqualification only one time and against only one judge. The motion shall be filed by the state at the time the indictment or information is filed in the district court, designating the judge to be disqualified. The motion shall be filed by the defendant in open court at arraignment, designating the judge to be disqualified, except that a defendant who is not represented by an attorney at arraignment may file the motion within 10 days after the arraignment. After a judge has been peremptorily disqualified upon the motion of a party, the opposing party may file a motion for peremptory disqualification within five days of being notified of the identity of the judge to whom the case has been assigned. Upon the filing of a motion for peremptory disqualification the disqualified judge shall take no further action except to conduct the arraignment and to assign the case to another judge.

W.R.Cr.P. 21.1(a) (repealed Nov. 26, 2013).

[¶11]  In early March of 2011, McEwan filed a signed and witnessed waiver of her right to a speedy trial and a motion to vacate the trial setting.  The motion recited that she was negotiating with the newly-elected county attorney for a plea agreement for herself, and if possible, a "global" agreement also resolving similar charges against her adult children. She anticipated that negotiations could be completed within ninety days and asked that the pretrial conference and trial not be reset until after June 15, 2011.

[¶12]  Within a week of filing that motion, defense counsel requested that McEwan be evaluated to determine whether she was mentally fit to proceed under Wyo. Stat. Ann. § 7-11-303, and expressed his belief that she was incapable of assisting in her own defense. The court granted the motion, and that decision suspended the proceedings until the evaluation was completed.  Wyo. Stat. Ann. § 7-11-303(a) (LexisNexis 2013).  The State Hospital submitted its finding that McEwan was in fact fit to proceed on May 13, 2011.

[¶13]  On June 29, 2011, another public defender entered his appearance and identified himself as the substitute for McEwan's original public defender.  That same day, he filed demands for discovery, for notice of the prosecutor's intent to introduce uncharged misconduct evidence, and for a speedy trial.  On September 27, 2011, the district court acted on McEwan's motion to reset her trial after June 15, 2011, and scheduled a pretrial conference on December 15, 2011, and trial on January 9, 2012, when it would be second on the trial stack.  On December 16, 2011, the court rescheduled the pretrial conference to May 24, 2012, and trial first on the trial stack for June 4, 2012 on its own motion.  The record contains no contemporaneous complaint from McEwan regarding the schedule established by the court's September 27 and December 16 orders.

[¶14]  On May 24, 2012, a letter in which McEwan indicated by her signature that she had accepted a plea agreement offered by the prosecutor was filed.  The State agreed to dismiss the charge relating to concealment of income in order to obtain food stamps, in exchange for which McEwan agreed to enter an *Alford* guilty plea to the remaining two charges.  The State also agreed to cap its sentencing argument to ask for concurrent sentences of no more than four to six years on those charges, and to dismiss pending felony probation revocation proceedings against her.  McEwan was free to argue for a lesser sentence and probation.  She agreed to pay restitution on all three of the original charges.

[¶15]  McEwan changed her plea to guilty as required by the agreement the same day it was filed.[4]  During that hearing she indicated that she understood the agreement and the

---

[4]  The record is somewhat vague as to whether a plea was actually entered.  McEwan's counsel was asked how she "would" plead, and counsel said she "would plead" guilty on an *Alford* basis.  One could argue that this was an expression of a future intent that never came to fruition.  However, the parties did not raise this issue.  We note that Wyoming Rule of Criminal Procedure 11 requires the court to personally address the defendant, which the court did.  However, it did not ask her how she pled.  The better practice would be to ask the defendant to state his or her plea rather than to allow counsel to do so.

advisements given her by the court, and that she was satisfied with her attorney's representation.

[¶16]  A presentence investigation report was completed on June 10, 2012, and the court set McEwan's sentencing for August 2.  The sentencing hearing began with an oral motion by McEwan's attorney to withdraw her guilty plea.  Counsel explained that McEwan "feels" she was confused and did not fully understand what was going on and what she was agreeing to at the time she changed her plea, that she felt coerced by a threat that the prosecutor might bring additional charges against her and her two adult children, and that she "has the feeling that her speedy trial rights have been violated."  The district court denied the motion.  McEwan was sentenced to concurrent terms of three to five years.

## DISCUSSION

### *The Change of Plea and the Motion to Withdraw Guilty Plea*

[¶17]  McEwan's first and third claims of error are overlapping arguments relating to the district court's alleged failure to comply with Wyo. Stat. Ann. § 7-11-507 and some of the dictates of  Wyoming Rule of Criminal Procedure 11 when taking her guilty plea or at

---

There also appeared to be confusion as to the nature of an *Alford* plea as compared to a no contest or nolo contendere plea.  A no contest plea cannot be used against a defendant in other civil or criminal proceedings.  W.R.E. 410, 803(22).  A factual basis is not taken under oath from the defendant as in the case of a guilty plea, because the statements could be used as admissions by a party opponent in other proceedings under Wyoming Rule of Evidence 801(d)(2).  1A Charles A. Wright & Andrew D. Leipold, *Federal Practice & Procedure* § 175 at 190-91 (4th ed. 2008); *Balderson v. State,* 2013 WY 107, ¶ 8 n.2, 309 P.3d 809, 811 n.2 (Wyo. 2013).  The factual basis is supplied by the prosecutor, often through reference to the affidavit supporting the information.  *Berry v. State*, 2004 WY 81, ¶ 39, 93 P.3d 222, 234 (Wyo. 2004).

On the other hand, an *Alford* plea is a guilty plea.  *N. Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970); 5 Wayne R. LaFave, et al., *Crim. Proc.* § 21.4(f) (3d ed. 2007).  It differs from a conventional guilty plea because the defendant denies his guilt and therefore does not supply a satisfactory basis for the plea, but instead seeks to obtain the benefit of a plea bargain to avoid a potentially harsher penalty than he might receive if he goes to trial and is convicted.  *Id*.  Courts considering the issue have held that an *Alford* plea has the same preclusive effect in subsequent civil litigation as an ordinary guilty plea.  *Zurcher v. Bilton*, 379 S.C. 132, 136, 666 S.E.2d 224, 227 (2008); *United States v. In*, 83 Fed. R. Evid. Serv. 168 (D. Utah 2010).  Since the plea is admissible in other proceedings, it would be good practice to confirm with the defendant seeking to enter an *Alford* guilty plea that she understands the right to a jury trial, believes that the State can produce the evidence it claims it can, understands that a conviction may be used against her in other proceedings, and wishes the court to accept a guilty plea and impose sentence in order to obtain more favorable treatment under a plea agreement than she expects if the case goes to trial and there is a conviction.

prior proceedings.[5]  With respect to her first claim, she argues that the court failed to advise her that a guilty plea to the felonies with which she was charged might result in the loss of her right to possess firearms and her ability to hold or obtain a job that required carrying and using firearms.  As to Rule 11, McEwan asserts that the court failed to (1) address her personally to confirm that her plea was voluntary, rather than the result of some form of coercion or promises made apart from the plea agreement; and (2) advise her of her plea options and explain the effect of each.  As to her first claim, she asks this Court to vacate her convictions so that her original not guilty pleas would be reinstated.

[¶18]  In her third claim of error, McEwan argues that the district court abused its discretion when it denied her motion to withdraw her guilty pleas because it failed to comply with Wyo. Stat. Ann. § 7-11-507[6] and some of the requirements of Wyoming Rule of Criminal Procedure 11.

[¶19]  We will reverse and remand with directions to set McEwan's convictions aside and to reinstate her not guilty pleas because the district court did not give the advisements required by Wyo. Stat. Ann. § 7-11-507.  We acknowledge that, unlike the situation with the appellant in *Balderson v. State,* 2013 WY 107, 309 P.3d 809 (Wyo. 2013), there is absolutely no doubt that McEwan has prior felony convictions – in fact, she was on felony probation when she committed the offenses in this case.  We also know that she was not employed in an occupation that required her to carry a firearm, and we have no

---

[5] McEwan directs us to a number of Rule 11 directives that were not followed at the change of plea hearing, but candidly suggests that most of those deficiencies were likely rendered harmless by the advice she received from the court during her arraignment and earlier proceedings.

[6] Section 7-11-507 provides as follows:

> (a) No judgment of conviction shall be entered upon a plea of guilty or nolo contendere to any charge which may result in the disqualification of the defendant to possess firearms pursuant to the provisions of 18 U.S.C. §§ 922(g)(1), (9) and 924(a)(2) or other federal law unless the defendant was advised in open court by the judge:
>
> > (i) Of the collateral consequences that may arise from that conviction pursuant to the provisions of 18 U.S.C. §§ 921(a)(33), 922(g)(1), (9) and 924(a)(2); and
>
> > (ii) That if the defendant is a peace officer, member of the armed forces, hunting guide, security guard or engaged in any other profession or occupation requiring the carrying or possession of a firearm, that he may now, or in the future, lose the right to engage in that profession or occupation should he be convicted.

Wyo. Stat. Ann. § 7-11-507 (LexisNexis 2013).

reason to believe that she has or ever will have aspirations to obtain such a job. However, as we explained in *Balderson*:

> Section 7-11-507 provides that "[n]o judgment of conviction shall be entered upon a plea of guilty or nolo contendere to **any charge** which **may** result in the disqualification of the defendant to possess firearms . . . **unless** the defendant was advised in open court by the judge." § 7-11-507 (emphasis added). The use of the word "charge" indicates to us that the legislature intended to require that the advisement be given if the charge is one which could result in loss of firearms privileges. Unlike the State, we interpret the word "may" to instruct courts to give the advisement if it is possible for a conviction of the crime charged to result in the loss of firearms rights. If the legislature had intended the advisement to be given only if a defendant had not already lost his firearms privileges, it could easily have said so, but did not.

*Id*. at ¶ 19, 309 P.3d at 813 (footnote omitted). We emphasized that the legislature required judges to do no more than read an advisement when accepting a guilty plea to crimes that could lead to loss of firearms and employment that required carrying firearms. We also pointed out that the advisement would have to be given in all felony prosecutions, meaning that it could simply be read in all district court cases. *Id*. at ¶ 22, 309 P.3d at 814. Finally, we noted that if the legislature intended that failure to give the advisement would not invalidate a guilty plea if the defendant had already lost his or her firearms privileges, it could legislatively overrule *Balderson*. *Id*. at ¶ 24, 309 P.3d at 814.

[¶20] Because we find that McEwan's guilty plea must be set aside due to lack of a firearms advisement, we find it unnecessary to address her claims that the provisions of Rule 11 of the Wyoming Rules of Criminal Procedure were not complied with. If she decides to plead guilty after remand rather than go to trial, we are confident that any deficiencies claimed here will be avoided. Giving the required advisements and otherwise complying with Rule 11 may appear to be a tedious and repetitive process for trial judges, and we acknowledge that defendants are often inattentive and disinterested in the advisements. However, engaging them in dialogue as the rule requires creates a record establishing that the right to trial by jury and other rights associated with it have been relinquished knowingly and voluntarily, and it must be followed.

***The Speedy Trial Questions***

[¶21] McEwan also asserts she was denied the constitutional right to a speedy trial under the Sixth Amendment to the United States Constitution as well as her speedy trial rights

under Wyoming Rule of Criminal Procedure 48. With regard to the constitutional right to speedy trial, we review *de novo*, taking into account and balancing the length of the delay, the reason for the delay, her assertion of that right, and any prejudice she suffered from the delay. None of these factors is alone sufficient to establish a constitutional violation. Rather, they must be considered together with other relevant circumstances, and with the goal of determining whether the delay was so unreasonable as to substantially impair McEwan's right to a fair trial. *Walters v. State*, 2004 WY 37, ¶¶ 9, 10, 87 P.3d 793, 795 (Wyo. 2004); *Barker v. Wingo*, 407 U.S. 514, 530, 533, 92 S. Ct. 2182, 2192-93, 33 L. Ed. 2d 101 (1972).

[¶22] From the time charges were first brought against McEwan until she entered her guilty plea 870 days elapsed. However, during a considerable portion of that time the district court had before it a waiver of speedy disposition and, except for a perfunctory written demand for a speedy trial filed by her substitute counsel nearly two-thirds of the way through that period, she never actively sought a trial date. To the contrary, she contributed to the delay.

[¶23] Between the filing of the charges against her on January 6, 2010, until her attorney filed his demand on June 29, 2011 – a period of 540 days – McEwan waived her right to a speedy preliminary hearing and obtained a continuance of that hearing, and twice obtained continuances of her arraignment, the second of which was prompted by her peremptory challenge of the district judge first assigned to her case and her request that he not arraign her, even though Rule 21.1(a) would have allowed him to do so. Two weeks before her first trial date of January 31, 2011, she obtained a continuance until April 11 and, on March 2 and March 10, 2011, waived her right to a speedy trial and sought a trial no earlier than June 15, 2011, so that she could pursue plea negotiations with the State.

[¶24] By March 15, 2011, her interactions with her first attorney led him to suspect that McEwan might be suffering from a mental problem that adversely affected her ability to assist in her own defense, and he therefore asked that she be evaluated to determine if she was fit to proceed under Wyo. Stat. Ann. § 7-11-303. The delays directly attributable to her requests and the fitness evaluation during the 540 days between the filing of charges and the entry of her second attorney totaled 334 days.

[¶25] When McEwan's substitute counsel appeared and demanded a speedy trial, he also filed motions that had to be resolved before a new trial date could be set. Nowhere in the record is there any indication that the new attorney abandoned the plea negotiations begun by McEwan's first appointed lawyer, which had been the reason he sought a continuance. Despite demanding a speedy trial, he did not object or ask for an earlier setting when, on September 27, 2011, the district court set McEwan's trial for January 9, 2012.

8

[¶26] Trying to determine the reasons for additional delays of the trial would be an exercise in speculation, because the record tells us nothing. However, we think it fair to say that if McEwan had not earlier repeatedly asked to be taken off the district court's trial stack, and if she had not peremptorily challenged one of the two judges of the Fifth Judicial District, McEwan could have gone to trial much sooner. She must be held to have indirectly caused or significantly contributed to the overall length of the delay preceding the entry of her guilty plea.

[¶27] Perhaps more importantly, McEwan has failed to show that she was prejudiced by any delay preceding her plea. Such prejudice can take the form of unusual pretrial anxiety, lengthy pretrial incarceration, or impairment of her defense. *Boucher v. State*, 2011 WY 2, ¶ 17, 245 P.3d 342, 351 (Wyo. 2011). Neither McEwan's brief nor the record hint at any unusual anxiety. She was incarcerated for no more than a week after she was arrested and so was free on bond for almost all of the time she now claims imposed an unreasonable delay.

[¶28] She has made little effort to show that the passage of time impaired her ability to present a defense at trial. Although she asserts in her appellate brief – in almost as few words – that essential witnesses became unavailable or passed away, she concedes that this is not a matter of record and fails to identify those witnesses, the nature of their anticipated testimony, or when they became unavailable. For all of these reasons, we conclude McEwan was not deprived of her Sixth Amendment right to a speedy trial.

[¶29] We draw a similar conclusion concerning the speedy trial requirements of Wyoming Rule of Criminal Procedure 48. That rule requires that a defendant be brought to trial within 180 days following her arraignment unless the trial is continued for reasons excluded by rule.[7] Continuances permissible under the rule include those granted on the

---

[7] Wyoming Rule of Criminal Procedure 48 states in pertinent part:

> (b) *Speedy trial*. –
>
> (1) It is the responsibility of the court, counsel and the defendant to insure that the defendant is timely tried.
>
> (2) A criminal charge shall be brought to trial within 180 days following arraignment unless continued as provided in this rule.
>
> (3) The following periods shall be excluded in computing the time for trial:
>
> (A) All proceedings related to the mental illness or deficiency of the defendant;
> (B) Proceedings on another charge;
> (C) The time between the dismissal and the refiling of the same charge; and

defendant's motion and those granted on the court's own motion, if the latter are required in the due administration of justice, and the defendant, after notice, has not objected and shown in writing how the delay may prejudice her defense. W.R.Cr.P. 48(b)(1) and (4).

[¶30] McEwan's Rule 48 argument proceeds from the faulty premise that her arraignment took place on June 22, 2010. That was indeed the day initially set for arraignment, and the day on which she first appeared before the district court to be arraigned. The first trial date set was January 31, 2011, and this would of course have been more than 180 days after June 22, 2010. McEwan argues that her rights were therefore violated, even if she waived her Rule 48 right to speedy trial after January 31, 2011.

[¶31] However, although the court advised her of her rights and the nature of the charges against her on June 22, 2011, it did not take her plea that day because she peremptorily challenged the assigned judge and her attorney asked that the arraignment be continued. A new judge was then assigned and held the arraignment on August 26, 2010.

---

(D) Delay occasioned by defendant's change of counsel or application therefor.

(4) Continuances exceeding 180 days from the date of arraignment may be granted by the trial court as follows:

(A) On motion of defendant supported by affidavit; or
(B) On motion of the attorney for the state or the court if:
(i) The defendant expressly consents;
(ii) The state's evidence is unavailable and the prosecution has exercised due diligence; or
(iii) Required in the due administration of justice and the defendant will not be substantially prejudiced; and
(C) If a continuance is proposed by the state or the court, the defendant shall be notified. If the defendant objects, the defendant must show in writing how the delay may prejudice the defense.

(5) Any criminal case not tried or continued as provided in this rule shall be dismissed 180 days after arraignment.

(6) If the defendant is unavailable for any proceeding at which the defendant's presence is required, the case may be continued for a reasonable time by the trial court but for no more than 180 days after the defendant is available or the case further continued as provided in this rule.

(7) A dismissal for lack of a speedy trial under this rule shall not bar the state from again prosecuting the defendant for the same offense unless the defendant made a written demand for a speedy trial or can demonstrate prejudice from the delay.

[¶32] The *sine qua non* of an arraignment is the taking of a plea. The purpose of an arraignment is "to inform the accused of the charge against him and obtain an answer from him." 1A Wright, *supra*, § 161; *see also* W.R.Cr.P. 10; 5 LaFave, *supra*, § 21.4(a); 22 C.J.S. *Criminal Law* § 478 (updated 2013); 21 Am. Jur. 2d *Criminal Law* § 545 (updated 2013). A plea was not asked of or taken from McEwan until August 26, 2010, because her attorney asked that it not be, and that is consequently the date on which she was arraigned.

[¶33] The 180-day limit contained in Rule 48 would therefore have expired on February 22, 2011, and McEwan would have had her trial within that period if it had taken place as scheduled on January 31, 2011. However, on January 11, 138 days after her arraignment, she moved to continue the trial, and the district court subsequently rescheduled it for April 11. On March 2, she waived her right to a speedy trial, and eight days later she moved for another continuance to a date no earlier than June 15. The court granted that motion and reset McEwan's trial for January 9, 2012. Neither she nor her new attorney objected to that setting, even though they had filed a demand for a speedy trial on June 29, 2011.[8] The court then continued the trial to June 4, 2012 on its own motion, and again McEwan did not object or attempt to show how further delay might prejudice her. Before the rescheduled trial took place, she changed her plea.

[¶34] Disregarding the continuances which were properly granted under Rule 48, only 138 of the permissible 180 days elapsed after McEwan's arraignment. After that point in time, she signed a valid waiver of her speedy trial rights. She was not therefore denied her right to speedy trial under the rule.

### *Restitution*

[¶35] McEwan claims that the district court erred by ordering restitution which the Department of Corrections may withdraw from her prison earnings. Since we remand with instructions to vacate her convictions, we need not address this issue in detail, but point out what we believe to be statutory provisions that govern collection of restitution from defendants incarcerated in institutions operated by the Department of Corrections.

[¶36] When it set the amount of restitution owed by McEwan during her sentencing hearing, the district court said, "Of course, none of that is going to be due until she's released." The judgment and sentence awarded restitution without this limitation, and McEwan now claims that this omission improperly allows the Department of Corrections to make restitution payments from her inmate account and renders the written sentence illegal.

---

[8] Under Rule 48(b)(7), such a demand by itself does not affect the propriety of a subsequent continuance. It only becomes relevant if a prosecution is dismissed under the rule and the prosecutor then attempts to reprosecute the defendant.

[¶37] Unless the district court found that McEwan was unable to pay restitution, it was required to set the total amount she must repay DFS, and its order to that effect constituted a judgment upon which DFS could execute. Wyo. Stat. Ann. § 7-9-103(b), (d) (LexisNexis 2013). However, the legislature has empowered district courts to order a payment plan only when they place a defendant on probation. Wyo. Stat. Ann. § 7-9-104(a) (LexisNexis 2013). If a defendant is sent to prison and performs work, the Department of Corrections is required to place the first $1,000 of her pay in her personal savings account at the institution where she is held. After that amount has accumulated, the Department is required to use an inmate's wages to pay restitution and other court-ordered financial obligations. Wyo. Stat. Ann. § 7-16-205(a)(i), (v) (LexisNexis 2013). We are confident the district court will consider these provisions if McEwan is convicted after remand and incarcerated.

### *Substitution of Counsel*

[¶38] McEwan also argues that her first public defender did not properly withdraw from her case, that the substitution of her second public defender was therefore also improper, and that she was prejudiced by the substitution because it delayed her case and adversely affected the preparation of her defense. While the record suggests that the requirements of Uniform Rule of District Court 102 were not strictly complied with, McEwan's not guilty plea will be restored, and issues relating to her representation in the future can be addressed by the trial court. We will not therefore address them here.

## CONCLUSION

[¶39] We reverse McEwan's conviction and remand with instructions to reinstate her not guilty plea because the district court did not advise her at the time of taking her guilty plea that a felony conviction would prevent her from possessing firearms and being employed in professions that require the carrying of a firearm. Because McEwan may choose to go to trial or enter a guilty plea on remand, this Court will not address other issues she raises relating to the district court's advice to and colloquy with her at the time of taking her plea, issues regarding the denial of her motion to withdraw her plea, restitution, or substitution of counsel. We find no violation of the Sixth Amendment right to a speedy trial or of the speedy trial provisions of Wyoming Rule of Criminal Procedure 48.