2007 WY 55

**Daniel William WILSON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 06–16.**

Supreme Court of Wyoming.

April 6, 2007.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Tina N. Kerin, Senior Assistant Appellate Counsel. Argument by Ms. Kerin.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Mackenzie Williams, Student Intern. Argument by Mr. Williams.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] The appellant entered into a plea agreement under which he pled guilty to two counts of attempted manslaughter. He now appeals the ensuing judgment and sentence on two grounds: that he was incompetent to enter the guilty pleas, and that the judge restricted his right to allocution.

[¶ 2] We affirm.

### ISSUES

[¶ 3] 1. Did the district court err in accepting the appellant's guilty pleas without first establishing his mental competency?

2. Did the district court improperly interfere with the appellant's right to allocution?

### FACTS

[¶ 4] At about 10:30 p.m., on June 28, 2004, the appellant went to the home of his sister and brother-in-law in Cheyenne, Wyoming. The appellant rang the front doorbell, but because of ongoing family difficulties, his sister and brother-in-law engaged him in conversation through an open window, rather than opening the door. Upon noticing that the appellant was armed, the occupants began to retreat from the doorway area. The appellant shot twice into the house, once in each occupant's direction, barely missing them both. He then fled the scene and was arrested in his vehicle after a brief "low-speed" chase.

[¶ 5] The appellant was charged with two counts of attempted first-degree murder.

He pled not guilty to both counts during his district court arraignment, but his attorney told the court that he might later change his pleas to not guilty by reason of mental illness or deficiency. On September 17, 2004, the district court granted the appellant's motion to continue the trial because defense counsel was still evaluating the possibility of entering such pleas.

[¶ 6] On October 28, 2004, the appellant filed a motion seeking to amend his pleas to not guilty by reason of mental illness or deficiency. In the motion, defense counsel reported his personal concern that the appellant was mentally unfit to proceed. Along with the motion, the appellant filed a copy of a psychological evaluation report prepared by a licensed psychologist, Mark J. Watt, Ph.D., J.D. In his report, Dr. Watt opined that the appellant was competent to proceed, but that at the time of the offenses he "was suffering from a major mental illness or deficiency that would meet statutory threshold criteria necessary for establishing a basis for not guilty by mental insanity defense."

[¶ 7] In response to the appellant's motion and Dr. Watt's report, the district court suspended further proceedings and ordered the appellant to undergo a mental health evaluation at the Wyoming State Hospital pursuant to Wyo. Stat. Ann. §§ 7–11–301 through 304 (Lexis Nexis 2003). In a report dated February 28, 2005, Abram C. Hitt, Ph.D., determined both that the appellant was competent to proceed and that he was not mentally incompetent at the time of the offenses.

[¶ 8] On March 23, 2005, the district court held a status hearing for the purpose of allowing counsel to agree on the record that "there is no issue from either the defense or the State as to the psychiatric evaluations as to competency or fitness to proceed[, but] [t]here is a divergence of opinions as to whether or not he qualifies for the mental illness defense." After listening to this stipulation by counsel, the district court proceeded to set the matter for trial.

[¶ 9] On April 27, 2005, the appellant appeared before the district court for a change-of-plea hearing. The court was informed

that the parties had entered into a plea agreement under which the appellant would plead guilty to two reduced charges of attempted manslaughter, with sentencing to be left to the court's discretion. An Amended Information was filed and the appellant pled guilty to the two lesser counts contained therein. Upon counsels' request, the court ordered the appellant to undergo a "threat assessment" at the Wyoming State Hospital as part of the pre-sentence investigation. The examiners who conducted that assessment categorized the appellant as being a "moderate to high risk" for the commission of future violent acts.

[¶ 10] The appellant was sentenced on October 28, 2005. During the sentencing hearing, he was given the opportunity to allocute.[1] Accepting that invitation, the appellant spoke for several minutes, with his primary topic being the history of his family's dysfunctional inter-relationships. At one point during his discourse, the appellant was interrupted by his own attorney, at which point the following colloquy occurred:

> [DEFENSE COUNSEL]: Judge, if I may, I understand the defendant is allowed to make his statements, but these are being made—most of the statements are being made against the advice of counsel, just for the record.
>
> THE COURT: I assume that's so, [counsel].
>
> [THE APPELLANT]: I know most of these statements can be made—can be construed as motive for me to try to kill them. I did not try to kill them. If I was really trying, I think I would have got the job done.

After the appellant continued to speak in the same vein, the district court then interrupted him with the following comments:

> THE COURT: Mr. Wilson, you're entitled to speak in your behalf here, but you're really way beyond the point by any reasonable measure. You're not helping yourself any. As you just indicated yourself, these comments do nothing but rein-

force the belief in the view of any reasonable person who might be listening that you yet are resentful, and would harm these people should you be given the chance. I believe the Court has allowed you to offer all the information that might be reasonable, helpful at sentencing, so we'll proceed with that.

While the record does not reveal what length of time the appellant spoke in allocution, his comments take up eight pages of the sentencing hearing transcript.

## DISCUSSION

### Did the district court err in accepting the appellant's guilty pleas without first establishing his mental competency?

[¶ 11] The standard for mental competency of a defendant to proceed in a criminal case is set forth in Wyo. Stat. Ann. § 7–11–302 (Lexis Nexis 2003):

> (a) No person shall be tried, sentenced or punished for the commission of an offense while, as a result of mental illness or deficiency, he lacks the capacity to:
>
> (i) Comprehend his position;
>
> (ii) Understand the nature and object of the proceedings against him;
>
> (iii) Conduct his defense in a rational manner; and
>
> (iv) Cooperate with his counsel to the end that any available defense may be interposed.

Although the question of competency is a factual issue, the requirement that competency be established is a matter of law that is reviewed *de novo*. *deShazer v. State*, 2003 WY 98, ¶ 12, 74 P.3d 1240, 1244–45 (Wyo. 2003).

[¶ 12] The appellant's present argument contains a procedural and a substantive element, both of which are statutorily based. First, the appellant contends that the district court violated Wyo. Stat. Ann. § 7–11–303(f) (Lexis Nexis 2003) by not making on the record a specific finding of competency to

---

1. "Allocution" in this context is "[a]n unsworn statement from a convicted defendant to the sentencing judge or jury in which the defendant can ask for mercy, explain his or her conduct, apolo-

gize for the crime, or say anything else in an effort to lessen the impending sentence." *Black's Law Dictionary* 83 (8th ed.2004)

proceed.[2] Second, the appellant alleges that the district court violated its obligation under Wyo. Stat. Ann. § 7–11–303(a) to suspend the proceedings upon its own motion, given the obvious evidence that the appellant was not fit to proceed.[3]

 [¶ 13] We find neither of these arguments compelling. Admittedly, the record reveals that the appellant was difficult, argumentative, egocentric, and highly suspicious of others. Nevertheless, both mental health professionals who evaluated the appellant, and both attorneys, reported to the court that the appellant did not suffer from a mental illness or deficiency that caused him to be incompetent to proceed. After both evaluation reports had been filed, the district court held a hearing for the purpose of allowing counsel to stipulate this conclusion for the record. While it might have been the better practice for the district court at that hearing to have actually stated on the record that he found the appellant competent to proceed, that was the practical effect of the hearing and of the court's follow-up comment: "So, we need a trial date." Where there was but one ruling for the district court to make, no prejudicial error occurred in the court's failure to make that specific ruling. *Follett v. State*, 2006 WY 47, ¶ 13, 132 P.3d 1155, 1160 (Wyo.2006). Furthermore, because the proceedings had already been suspended twice for the purpose of mental health evaluations, and there is no evidence that the appellant's mental condition changed thereafter, no duty on the part of the district court arose to suspend the proceedings yet again and order another evaluation. The same is true regarding the period of time between the change-of-plea hearing and the sentencing

hearing: the district court was presented with no evidence of a change in the appellant's mental condition that would require another evaluation.

### *Did the district court improperly interfere with the appellant's right to allocution?*

 [¶ 14] A criminal defendant's right to allocution is both rule-based and constitutionally protected.[4] *Christy v. State*, 731 P.2d 1204, 1207 (Wyo.1987).[5] The appellant relies upon *Harvey v. State*, 835 P.2d 1074, 1082 (Wyo.1992), for the proposition that the courts "do not prescribe limits on what the defendant can or cannot say during allocution." While that statement was, indeed, made by this Court in *Harvey*, it has been taken out of context and does not suggest that the right to allocution equates to the right to filibuster. The context in *Harvey*, unlike the context of the present case, was the use of an allocution statement in later proceedings against that defendant.

 [¶ 15] A trial judge always has the inherent authority to exercise reasonable control over the presentation of evidence, and that authority extends to the authority to limit allocution. *United States v. Muniz*, 1 F.3d 1018, 1024–25 (10th Cir.1993). A defendant's right to allocution is not violated when he has been given an "adequate opportunity under the circumstances to speak on his own behalf." *Id.* at 1025. In the present case, the district court did not "cut off" allocution until the appellant had described at length the family circumstances that resulted in commission of the crimes, and not until defense counsel interjected that the appellant's

---

**2.** Wyo. Stat. Ann. § 7–11–303(f) reads in pertinent part as follows:

> If neither the state, nor the accused or his counsel contests the opinion referred to in paragraph (c)(iii) of this section relative to fitness to proceed, the court may make a determination and finding of record on this issue on the basis of the report filed or the court may hold a hearing on its own motion. . . .

**3.** Wyo. Stat. Ann. § 7–11–303(a) reads as follows:

> If it appears at any stage of a criminal proceeding, by motion or upon the court's own

motion, that there is reasonable cause to believe that the accused has a mental illness or deficiency making him unfit to proceed, all further proceedings shall be suspended.

**4.** W.R.Cr.P. 32(c)(1)(C) provides that, before imposing sentence, the court shall "[a]ddress the defendant personally and determine if the defendant wishes to make a statement and to present any information in mitigation of the sentence."

**5.** For an historical analysis of the concept of allocution, *see Harvey v. State*, 835 P.2d 1074, 1085–1093 (Wyo.1992) (Urbigkit, Chief Justice, dissenting).

statements were being made against his advice. There was no error, much less an abuse of discretion suggesting manifest unfairness or injustice. *See Clouse v. State,* 776 P.2d 1011, 1015 (Wyo.1989).

## CONCLUSION

[¶ 16] Under the circumstances of this case, the district court did not err in accepting the appellant's guilty pleas without having first made an explicit finding on the record that the appellant was competent to proceed. Neither did the district court err in placing reasonable limitations upon the appellant's lengthy allocution.

[¶ 17] Affirmed.